**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Lawrence Charles KING, Defendant-Appellant.**

**No. 74–2004.**

United States Court of Appeals, Fifth Circuit.

Dec. 16, 1974.

**604**

Robert F. Lewis, Birmingham, Ala. (Court-appointed), for defendant-appellant.

Wayman G. Sherrer, U. S. Atty., Albert C. Bowen, Jr., Asst. U. S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before GEWIN, AINSWORTH and GEE, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellant King was tried and convicted by a jury of violating 18 U.S.C. § 1343 [1] by using telephone communications in interstate commerce as part of a fraudulent scheme to obtain money. King was sentenced to three years' imprisonment, and brought this appeal, alleging two errors which we discuss below. Finding no reversible error by the district court, we affirm.

### I. The Scheme

Viewed in the light most favorable to the Government, the evidence disclosed the following. In March of 1972, one Edward Fuller, Jr., purchased a mobile portrait studio from appellant. The studio was used in connection with business promotions to take portraits of persons in and around Florida shopping centers. The trailer was moved to Orlando, Florida, and King operated the studio from March of 1972 until late June of that year for Fuller, who resided in Cullman, Alabama. On June 27, 1972, King called Fuller (who was then in Atlanta, Georgia) from Florida and told Fuller that he (King) and a man named Bill Snyder had located a party interested in purchasing an interest in the trailer. Fuller told King to have the party sign an option agreement for purchase of a part interest if it was determined this person was seriously interested in the deal.

Two days later, on June 29, 1972, King again called Fuller in Atlanta. King said that he and Snyder had been successful in finding an investor interested in Fuller's business. Fuller was told this interested party's name was Robert Waldorf, and that Waldorf had signed an option agreement and put up $4,000 as earnest money. King informed Fuller that a copy of the option agreement, together with Waldorf's check for $4,000, had already been mailed to Fuller's Cullman, Alabama address. On July 1, 1972, King called Fuller a third time, asking Fuller if he had received the check and option agreement. Fuller replied that he had not yet checked his mail but would so so. Fuller subsequently received an envelope mailed from Florida containing the exe-

---

I. 18 U.S.C. § 1343 reads as follows:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

cuted option agreement (purportedly signed by Robert Waldorf and witnessed by William Snyder) and a check for $4,000 signed by Waldorf.[2]

On July 3, 1972, King again called Fuller in Cullman from a phone in Florida. King suggested some sort of commission for himself and Snyder was called for as a result of their arranging the deal. Fuller agreed, and on the same day wired $1,000 to Snyder and $500 to King in Fort Lauderdale, Florida, via Western Union. On July 6, Fuller received a call from Snyder, and a meeting of King, Snyder and Fuller in King's apartment in Orlando was arranged for July 10.

When Fuller arrived at the Orlando apartment on July 10, he found no one there. Fuller was unable to locate King and Snyder, nor could he initially locate his trailer. King and Snyder had left town.[3] Fuller then discovered that the $4,000 check from Waldorf was worthless. When Fuller contacted Waldorf, Waldorf disavowed any knowledge of the transaction, claiming he had never heard of Fuller or his trailer. Fuller then notified the authorities.

## II. The Points on Appeal

King, Snyder and Waldorf were indicted together on October 3, 1973 on one count of violating 18 U.S.C. § 1343. On January 15, 1974, Waldorf pled guilty and testified as a Government witness at Snyder's trial. Snyder was found guilty by a jury on January 21, 1974. (Snyder's conviction for his participation in this scheme is affirmed in our opinion of this same date, United States v. Snyder, 5 Cir., 1974, 505 F.2d 595 [No. 74–1316].) King, who had been a fugitive at the time of Snyder's trial, was apprehended on February 28, 1974. King was convicted on March 28, 1974; Waldorf testified as a Govern-

ment witness against King at the trial, and Snyder appeared as a witness in King's behalf. In his appeal, King contends that his conviction should be reversed on two grounds. First, he asserts plain error was committed because the guilty plea of a co-indictee (Waldorf) to the charge for which King was on trial was admitted without a cautionary instruction to the jury that a co-indictee's guilty plea must not be considered as evidence of a defendant's guilt. Second, King complains that evidence of a prior civil judgment against him was improperly admitted by the trial court.

## A. Was Plain Error Committed?

■■ At no time during the trial or the instructions to the jury did King's trial counsel object to Waldorf's testimony relating to his guilty plea, nor did counsel request an instruction from the court. The failure properly to direct the trial court's attention to this matter so that it might recognize and cure the error, if any existed, permits us to reverse the conviction only if the error was so patent as to have seriously jeopardized the substantial rights of the accused. Fed.R.Crim.P. 52(b). Moreover, we note at the outset that "[t]he power to notice a plain error . . . is one that the courts exercise cautiously and only in exceptional circumstances." 3 C. Wright, Federal Practice and Procedure § 856, at 373.

The fact of Waldorf's guilty plea was first mentioned at the trial by the district judge. This occurred in connection with opening statements to the jury by King's counsel that he would show that Waldorf, a chief Government witness, could not be believed because Waldorf was "a convicted felon, who has got a record, as long as a man's arm . . . . ."[4] Aware of defense coun-

---

2. While there is no dispute regarding Waldorf's complicity in the scheme, he apparently did not personally sign the check and the option agreement but had a girl friend sign his name to the papers.

3. Snyder and King had received the Western Union money orders on July 4 and on July

6, immediately after Snyder's call to Fuller, the two left Florida for Texas.

4. The colloquy at trial was as follows:
   Mr. Lewis [Defense Counsel]: May it please the Court, ladies and gentlemen of the jury. Ladies and gentlemen, Mr. Bow-

sel s intentions, the prosecutor anticipated this argument by having Waldorf admit, on direct examination, all of his prior convictions, one of which was Waldorf's conviction for the fraud transaction presently in question.[5] Defense counsel did not object to this questioning, nor request a cautionary instruction. Waldorf's plea was not mentioned again by the prosecutor—that is to say, the Government did not emphasize the plea, nor did the prosecution suggest that Waldorf's plea was relevant to the issue of King's guilt. The guilty plea was once more brought out, but by defense counsel in his cross-examination of Waldorf.[6] Finally, the court's instructions to the jury included the following comment on the convictions of Waldorf and Snyder: [7]

I charge you that the evidence of prior convictions which was admitted in this case both as to Mr. Snyder and Mr. Waldorf is to be considered by you as reflecting upon their credibility as witnesses only. This does not disqualify them from testifying but it is a circumstance or circumstances which you have the right to consider in determining whether you believe them.

Appellant contends that the court's failure to specifically admonish the jury that a co-indictee's guilty plea may not be considered as substantive evidence of a defendant's guilt mandates reversal, particularly because such an instruction was not given at the time the plea was first brought to the jury's attention. King relies on United States v. Harrell,

---

en told you that he is going to put on the stand Mr. Waldorf who is going to tell you that this was a scheme and contrivance. We expect the evidence to show that Waldorf, incidentally, who is a convicted felon, who has got a record, as long as a man's arm—

Mr. Bowen [Prosecutor]: Now, we object to that, may it please the Court.

The Court: Now, I sustain that objection.

Mr. Lewis: Ladies and gentlemen, we will—which part of that do you sustain the objection to, Your Honor?

The Court: About his record being as long as an arm.

Mr. Lewis: I withdraw that, Your Honor. I withdraw it. I used that slang term and I withdraw that.

The Court: All right. I'll permit you to say he has been convicted because he pled guilty in this case.

Mr. Lewis: Thank you, Your Honor. He has been convicted of numerous felonies.

Mr. Bowen: We object to that, may it please the Court. That's not true.

Mr. Lewis: All right.

The Court: You are talking about impeaching a witness now rather than what the evidence will show. You can say you expect to put on evidence that will attack his credibility.

Mr. Lewis: All right. Thank you, Your Honor. Ladies and gentlemen, we expect the evidence to show that this man has been convicted of a felony and that we expect this evidence to impeach his credibility.

5. Immediately after Waldorf took the stand, the prosecutor asked the following questions:
Q. Your name is William Robert Waldorf?
A. Yes sir.
Q. And are you presently incarcerated in the Federal Penitentiary in Arkansas?
A. Texarkana, Texas.
Q. Texarkana, Texas. And, Mr. Waldorf, you are charged in this same indictment that charges Mr. King in this offense, is that correct?
A. Yes sir.
Q. And you entered a guilty plea to this indictment previously, have you not?
A. Yes sir.
Q. You've also been convicted of a felony in Federal Court in Memphis, Tennessee.
A. Yes sir.
Q. —have you not? And also you were convicted of a felony in the State of Florida, were you not?
A. Yes sir.

6. Defense cross-examination of Waldorf included the following:
Q. Mr. Waldorf, what felonies have you been convicted of?
A. Interstate transportation of stolen securities, stopping payment on a check with intent to defraud, and this charge here.
Q. Were you convicted of this charge?
A. I pleaded guilty to this charge.

7. Snyder testified as a defense witness, and his conviction was brought out during his testimony. *See* note 16, *infra.*

5 Cir., 1969, 436 F.2d 606, on remand, 458 F.2d 655, cert. denied, 409 U.S. 846, 93 S.Ct. 49, 34 L.Ed.2d 86 (1972); United States v. Baete, 5 Cir., 1969, 414 F.2d 782, and on United States v. Davis, 5 Cir., 1973, 487 F.2d 112, cert. denied, 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878. *Harrell* found plain error in a situation where a jury was allowed to hear of a witness' guilty plea without proper limiting instructions. *Davis* and *Baete*, though not finding plain error, emphasized that cautionary instructions are essential where the jury learns of a codefendant-witness' guilty plea. King's argument maintains, essentially, that the absence of an immediate cautionary instruction automatically requires reversal.

We recognize that there is potential prejudice inherent in a witness' statement that he was the defendant accomplice or co-conspirator, and that he has pled guilty to the crime for which the defendant is charged. One person's guilty plea or conviction may not be used as substantive evidence of the guilt of another. *See, e. g.,* United States v. Baete, *supra,* 414 F.2d at 783; United States v. Crosby, 2 Cir., 1961, 294 F.2d 928, 948; Babb v. United States, 5 Cir., 1955, 218 F.2d 538, 541 & n. 9; LeRoy v. Government of Canal Zone, 5 Cir., 1936, 81 F.2d 914. The introduction of a codefendant's guilty plea is permissible, however, when its use is limited to proper evidentiary purposes such as to impeach trial testimony or to reflect on a witness' credibility. *See* United States v. Harrell, *supra,* 436 F.2d at 614 & n. 9. Nonetheless, this circuit has emphasized that cautionary instructions by the trial court are both essential and effective in avoiding prejudice where the fact of a coconspirator's guilty plea is brought out at a trial before a jury. United States v. Davis, *supra,* 487 F.2d at 120; United States v. Harrell, *supra,* 436 F. 2d at 617; United States v. Baete, *supra,* 414 F.2d at 783–784. But, as our cases make clear, the lack of an instruction does not necessarily constitute reversible error. Our focus on review is fairness, and jury instructions are but one factor to be considered in determining whether the proceedings below unfairly prejudiced the substantial rights of the accused.

We have canvassed this circuit's cases on this issue of cautionary instructions and the guilty pleas of co-indictee-witnesses.[8] The vagaries of these cases emphasize that "when an appellate court should take notice of an error not raised below must be made on the facts of the particular case, and there are no 'hard and fast classifications in either the application of the principle or the use of a descriptive title.'" 2 C. Wright, Federal Practice and Procedure § 856, at 373, quoting Dupoint v. United States, 5 Cir., 1968, 388 F.2d 39, 45. Only *Harrell* has found plain error in the failure to give an unrequested instruction, and its conclusion was specifically predicated on finding that both "aggravating circumstances" and the absence of any cautionary instructions were presented. 436 F.2d at 617. Most recently, in United States v. Richardson, 5 Cir., 1974, 504 F.2d 357, we noted that while "our cases reflect a deep sensitivity to the possibilities of prejudice caused by allowing a jury in a criminal case to consider evidence of a co-defendant's guilty plea," the absence of a cautionary instruction alone would not warrant a conclusion of plain error. Moreover, the

8. United States v. Richardson, 5 Cir., 1974, 504 F.2d 357; United States v. Davis, *supra*; United States v. Franicevich, 5 Cir., 1972, 465 F.2d 467; United States v. Cook, 5 Cir., 1972, 461 F.2d 906, cert. denied, 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 219; United States v. Johnson, 5 Cir., 1972, 455 F.2d 311; United States v. Womack, 5 Cir., 1972, 454 F.2d 1337; United States v. Harrell, *su- pra;* United States v. Baete, *supra;* Babb v. United States, 5 Cir., 1955, 218 F.2d 538; Elder v. United States, 5 Cir., 1954, 213 F. 2d 876; *see also* United States v. Newman, 3 Cir., 1974, 490 F.2d 139, 143–144; United States v. Del Purgatorio, 2 Cir., 1969, 411 F.2d 84, 87; Freije v. United States, 1 Cir., 1967, 386 F.2d 408, 411; United States v. Kahn, 7 Cir., 1967, 381 F.2d 824, 837–838.

*Harrell* court itself stated that "[o]ur discussion of the prejudicial effect of permitting testimony as to [a witness'] prior pleas of guilty should be clearly understood as limited to the facts before us." 436 F.2d at 614. In United States v. Franicevich, 5 Cir., 1972, 465 F.2d 467, the court took this language at face value and limited *Harrell* to its facts, concluding that "on this [plain error] point each case depends on its own particular facts and circumstances." 465 F.2d at 472 n. 4. In United States v. Johnson, 5 Cir., 1972, 455 F.2d 311, the trial judge informed the jury of a coconspirator's guilty plea. Emphasizing the factual situation in which this occurred, the court affirmed the conviction without even citing *Harrell*. This circuit again refused to find reversible error in United States v. Cook, 5 Cir., 1972, 461 F.2d 906, cert. denied, 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 219, where the defendant's attorney himself caused the evidence of the witness' guilty plea to be introduced into the case during attempts to impeach the credibility of the witness. 461 F.2d at 911.

■ Thus, a number of our cases—in fact, all but one—have declined to find plain error when the fact of a coconspirator's guilty plea was made known to the jury even though no cautionary instructions were given. In assessing King's assertion of plain error in this case, then, we must carefully examine all the facts and circumstances of the case in their proper context. The presence

or absence of an instruction is an important factor, but it is also essential to consider other factors, such as whether there was a proper purpose in introducing the fact of the guilty plea,[9] whether the plea was improperly emphasized or used as substantive evidence of guilt,[10] whether the introduction of the plea was invited by defense counsel,[11] whether an objection was entered or an instruction requested, whether the defendant's failure to object to the testimony could have been the result of tactical considerations,[12] and whether, in light of all the evidence, the failure to give an instruction was harmless beyond a reasonable doubt.[13]

■■ Upon reviewing the record, we are firmly convinced that it presents no reversible error. Defense counsel's arguments to the jury and his references to Waldorf's criminal record[14] made it almost essential for the prosecution to bring out Waldorf's convictions on direct examination. Once Waldorf's background was injected into the case by defense counsel, his record could not be ignored by the Government. Nor could the Government have introduced all of Waldorf's convictions except the one which grew out of the scheme in question. To do so would have left the prosecution open to accusations of selective disclosure or misleading the jury. In this case the defense opened the door by first inviting the Government to introduce the evidence of Waldorf's plea, and then proceeding to bring out itself the

---

9. *See* United States v. Harrell, *supra,* 436 F.2d at 614 & n. 9; United States v. Cook, *supra,* 461 F.2d at 911 & n. 4.

10. *See* United States v. Harrell, *supra,* 436 F.2d at 614, 617; Elder v. United States, *supra;* LeRoy v. Government of Canal Zone, *supra.*

11. United States v. Cook, *supra,* 461 F.2d at 910–911.

12. One legitimate defense consideration might be a concern that the remedy could be more injurious than the malady—that is, that a corrective instruction might call more attention to a witness' guilty plea than the wit-

ness' admission. Also relevant is our language in Sykes v. United States, 5 Cir., 1966, 373 F.2d 607, cert. denied, 386 U.S. 977, 87 S.Ct. 1172, 18 L.Ed.2d 138 (1967), where the court noted that a strict plain error rule might "tempt defendants to try for two bites of the apple, saving defenses for use in getting a new trial on appeal if the first trial has yielded a guilty verdict." *Id.* 373 F.2d at 613.

13. *See* Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

14. *See* note 4 *supra.*

evidence of Waldorf's plea.[15] In so doing, appellant waived his claim that the introduction of Waldorf's plea was erroneous, and cannot now be heard to seek reversal for want of an unrequested instruction.

Two factors reinforce our conclusion that no reversible error is here presented. First, even if *Harrell* and *Davis* confined us (though they do not) solely to examining the adequacy of cautionary instructions, the court's instruction was sufficient to avoid jury consideration of Waldorf's plea as relevant to King's guilt or innocence. Second, we do not believe the Government erred in bringing out Waldorf's plea as it did on direct examination under the facts of this case, where the testimony was restricted to informing the jury of a Government witness' prior criminal background.

A number of cases have held that when a party calls a witness with a criminal record, that record should be elicited on direct examination.[16] This has been held proper even when the witness' criminal record includes a conviction for or plea of guilty to the same charge for which the defendant is on trial. United States v. Freeman, 2 Cir., 1962, 302 F.2d 347, 350, cert. denied, 375 U.S. 958, 84 S.Ct. 448, 11 L.Ed.2d 316 (1963); Loraine v. United States, 9 Cir., 1968, 396 F.2d 335, 339, cert. denied, 393 U.S. 933, 89 S.Ct. 292, 21 L. Ed.2d 270. United States v. Rothman, 2 Cir., 1972, 463 F.2d 488, holds that where the prosecutor merely introduces the prior guilty plea of the witness on direct and neither stresses that plea nor intimates to the jury that the defendant's guilt can be inferred from the witness' guilty plea, the court's failure to give an unrequested cautionary instruction is not plain error. 463 F.2d at 490. We believe, as the court in *Rothman* indicated, that if the defense had requested a cautionary instruction, the trial court should have given it, but the failure to give such an instruction does not, of itself, constitute plain error where there is no request for an instruction. *See* United States v. King, 4 Cir., 1970, 420 F.2d 946, 947, cert. denied, 397 U.S. 1017, 90 S.Ct. 1253, 25 L.Ed.2d 432 (no plain error in failure to give unrequested cautionary instruction that codefendants' pleas of guilty were not to be considered as evidence of defendant's guilt); *see also* United States v. Kimbrew, 6 Cir., 1967, 380 F.2d 538, 540; Casados v. United States, 5 Cir., 1962, 300 F.2d 845, 848–849, cert. denied, 373 U.S. 938, 83 S.Ct. 1543, 10 L.Ed.2d 693 (1963). For all these reasons, we do not believe that plain error has been demonstrated, and reject King's first argument on appeal.

B. Was evidence of prior conduct by appellant improperly admitted?

When King took the stand on his own behalf, the Government cross-examined him regarding an incident in Ohio. The Government claimed, and King admitted, that a $7,000 civil judgment had been entered in the state courts of Ohio against King. The judgment was obtained when King sold a mobile portrait trailer for $7,000, then shuttled the trailer to Florida, neglecting to deliver the trailer to the Ohio purchaser. The trailer involved in the Ohio transaction was the same trailer King sold to Fuller, and was the same trailer in which Waldorf purportedly purchased an interest. King claims the prosecutor's injection

---

15. *See note 6 supra.*

16. It is interesting to note that although King protests the Government's actions in bringing out the criminal record of its witness (Waldorf) on direct examination, defense counsel himself engaged in the same practice. Upon calling William Snyder as a defense witness, counsel immediately asked: "Now, Mr. Snyder, I would like for you to tell the jury—state whether or not you were convicted of this scheme to defraud Edward Fuller?"

**610**

into the trial of this prior transaction was reversible error.

■■■■■ We find no merit to this contention. The Ohio transaction was not introduced merely to show the defendant's bad character, nor was the evidence of prior fraud of a vague and uncertain character. *Compare* Kraft v. United States, 8 Cir., 1956, 238 F.2d 794, 801–803. The Ohio fraud was almost identical in nature, it involved the same portrait trailer which was the subject of the alleged Florida fraud, and it was recent in time. This was sufficient connection to show a general pattern of conduct, it was a transaction reasonably near in time, and the fraud reflected intent similar to that charged in the present case. The reference to King's prior fraudulent dealings was thus proper. Gilstrap v. United States, 5 Cir., 1968, 389 F.2d 6, 9–10. It is well established that evidence of prior similar acts is admissible to prove the elements of knowledge and intent. "Evidence that similar and related offenses were committed in this period [prior to indictment] tended to show a consistent pattern of conduct highly relevant to the issue of intent." Nye & Nissen v. United States, 336 U.S. 613, 618, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949); *see* United States v. Jones, 5 Cir., 1973, 486 F.2d 1081, 1083–1085 and cases cited; United States v. Jaqua, 5 Cir., 1973, 485 F.2d 193, 195 and cases cited n. 3; Matthews v. United States, 5 Cir., 1969, 407 F.2d 1371, 1381; Gilstrap v. United States, *supra*; 2 Wigmore on Evidence § 302 (3d ed. 1940). Moreover, the development of such evidence is viewed more favorably when it is introduced, as it was here, on cross-examination rather than direct. *See* McCormick on Evidence, § 190, at 452, § 196, at 468. The admission of such evidence is highly relevant where, as here, there has been a repetition of fraudulent dealings such as to indicate a great improbability of ignorance or innocent intent.

Affirmed.