**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Eunice Rebecca SMITH, a/k/a Becque Smith, Thomas Lee Rush, Defendants–Appellants.**

No. 88–3834.

United States Court of Appeals, Eleventh Circuit.

Feb. 7, 1990.

As Amended March 12, 1990.

---

Clyde Taylor, Tallahassee, Fla., for Rush.

Robert Augustus Harper, Tallahassee, Fla., for Smith.

Michael Simpson, Asst. U.S. Atty., Tallahassee, Fla., for U.S.

Before KRAVITCH and JOHNSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

These are appeals from convictions in a joint trial of the two appellants on several counts of an indictment charging them with violation of federal anti-drug statutes and related crimes.

## I. STATEMENT OF THE CASE

The second superseding indictment upon which these appellants were found guilty, charged in 12 counts, that these defendants and five other persons were guilty of drug, firearms and false statement offenses. Two of the co-defendants entered guilty pleas prior to trial and two other co-defendants entered pleas to lesser offenses during the first day of testimony. A fifth defendant was acquitted of all charges. Smith was convicted on Counts 1, the con-

spiracy count, and on 2, 4 and 10 and acquitted of Counts 8 and 9. Rush was convicted on the same counts as Smith and also on Counts 3, 5 and 6. He was acquitted under Counts 7 and 11. Smith, who also appeals from her sentence, received a sentence on Count 1 of 264 months imprisonment under the sentencing guidelines and she received concurrent sentences on Counts 2, 4, and 10. The statement of such facts as is necessary will be discussed with respect to each issue. The issues will be taken up seriatim.

## II. ISSUES

1. Whether there was one or more than one conspiracy proved under Count I?

2. Did the trial court commit reversible error in refusing to grant a mistrial when it accepted the plea bargain entered by two of the original defendants, who had been indicted jointly with appellants, which plea bargain was accepted by the trial court after the jury was empaneled and opening statements had been made and one witness had testified for the government? Also, did the court commit reversible error when it permitted such defendants to testify for the government?

3. Was there sufficient evidence to warrant a verdict of guilty for violation of the false statement or the coverup sections of 18 U.S.C. § 1001?

4. Was there sufficient evidence to warrant a jury verdict against Smith on Counts 2 and 10?

5. Did the trial court correctly apply the sentencing guidelines sentencing Smith when it enhanced her sentence because of its finding that she occupied a managerial role in the ongoing conspiracy?

## III. DISCUSSION

### A. *One or More Conspiracies?*

Count 1 of the indictment charged as follows:

FROM ON OR ABOUT January 1, 1980, and after January 1, 1985, and continuing until on or about February 10, 1988, in the Northern District of Florida and elsewhere, the defendants,

THOMAS LEE RUSH,

EUNICE REBECCA SMITH,

a/k/a BECQUE SMITH,

ANTHONY EDWARD PONTON,

TOM MIX GAY,

RICHARD RAYMOND WILLIAMS,

KERRY E. PHILLIPS,

and

DENNIS O. PHILLIPS,

knowingly and intentionally did combine, conspire, confederate, agree with and have a tacit understanding together with each other and with other persons:

(1) to manufacture, possess with intent to distribute and distribute fifty kilograms or more of marijuana, a controlled substance;

(2) to manufacture, possess with intent to distribute and distribute methamphetamine, a controlled substance; and

(3) to possess with intent to distribute and distribute 500 grams or more of cocaine, a controlled substance;

and all this was done in violation of Section 846 of Title 21 of the United States Code.

The record is replete with evidence that during the entire period covered by the alleged conspiracy, the named defendants were most, if not all, closely associated either as members of the Rush family or the Smith family, which later became the Rush–Smith family when Smith began to live with Rush and keep house for him and his children. Appellants do not contend that there was insufficient evidence to establish at least one conspiracy in the terms alleged in the indictment. They contend only that the court should have considered that each separate action during the period from 1980 until 1988, should be considered as a separate conspiracy. Having considered the evidence carefully, especially noting that during the entire period, some

of the parties were actively engaged in the growing, manufacturing, and sale of marijuana, the possession and sale of cocaine and the possession and sale of amphetamines and evidence that each of the alleged conspirators directly participated in some of the alleged substantive acts, we conclude that there was sufficient evidence of the connections and knowing cooperation between the several members of the alleged conspiracy to warrant a jury trial on this issue.

The plan does not become several plans simply because some members were cast in more vital roles than others or because certain members performed only a single function. Neither does it become several plans because of internal personnel changes. The government's substantial proof of overlapping membership and activities directed toward a common goal is sufficient to support the jury verdict reflecting a single conspiracy.

*United States v. Michel*, 588 F.2d 986, 995 (5th Cir.), *cert. denied*, 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979).

### B. *The Late Plea Bargains*

■ The trial court, in a pretrial order, had stated that any plea bargains must be completed no later than four working days prior to the beginning of the trial. Nevertheless, after the jury had been empaneled, opening statements had been made, and the first witness had testified, two of the co-defendants, the Phillips brothers, made a plea agreement with the government. This plea agreement was disclosed to the jury. Several days later, they were called to the witness stand to testify against their former co-defendants. The appellants moved for a mistrial and objected to the testimony given by these two former defendants. They now claim that it was reversible error for the trial court to permit this testimony.

Appellants have not called to our attention any case in which this precise issue has been decided by any court. They rely, however, on cases in which evidence is introduced showing that a co-defendant in the alleged crime has previously entered a guilty plea. *See United States v. Harrell*, 436 F.2d 606 (5th Cir.1970), *cert. denied*,

409 U.S. 846, 93 S.Ct. 49, 34 L.Ed.2d 86 (1972), and *United States v. King*, 505 F.2d 602 (5th Cir.1974).

This Court in *United States v. Edwards*, 716 F.2d 822 (11th Cir.1983), decided that it was not error for the trial court to have permitted the government to admit testimony by a former co-defendant that he had entered a plea of guilty. In doing so, we stated: "The governing standard [as to when it is appropriate to admit evidence of such a plea] was enunciated in *United States v. King, supra*:

[W]e must carefully examine all the facts and circumstances of the case in their proper context. The presence or absence of an instruction is an important factor, but it is also essential to consider other factors, such as whether there was a proper purpose in introducing the fact of the guilty plea, whether the plea was improperly emphasized or used as substantive evidence of guilt, whether the introduction of the plea was invited by defense counsel, whether an objection was entered or an instruction requested, whether the defendant's failure to object to the testimony could have been the result of tactical considerations, and whether, in light of all the evidence, the failure to give an instruction was harmless beyond a reasonable doubt." 505 F.2d at 608 (footnotes omitted).

716 F.2d at 825.

Considering the similarity between this case and *Edwards*, we note that the first factor discussed in the *King* opinion, is "the presence or absence of an instruction." Here, the court gave an instruction to the jury that was agreed to by the defendants. The court also instructed the jury properly in its final charge to the jury. As to the second factor, the government's purpose in introducing the evidence, the purpose was to counter the anticipated contention by the defendants that the Phillipses had pleaded guilty in order to benefit themselves by receiving a less serious sentence, thus establishing bias against the remaining defendants in the case. This corresponds with the facts in *Edwards* where the court said: "The district court did not err in allowing the Government to

rebut the inference of Lowe's bias by informing the jury that Lowe had already been convicted and sentenced before trial." 716 F.2d at 825. Thus, as we held in *Edwards*, there was a proper purpose in introducing the fact of the guilty plea. Although in *Edwards*, the evidence was given in rebuttal by the United States, here, it was justified on direct because of a statement made by counsel for Rush in his opening statement to the jury. There, he stated:

> I suggest to you that the evidence in this case will show, almost without exception, that everyone of these government witnesses who have cut a deal, *who have bought their freedom*, Williams, Hildebrandt, Ponton, Roxie, Tipton, on and on and on, that they have had motives above and beyond perhaps their agreement with the government.

This clearly placed the government on notice that the defendants intended to show an improper motive in the Phillipses' plea bargain.

Defendants do not now claim that the pleas were improperly emphasized or used in any way by the United States as "substantive evidence of guilt." Moreover, as indicated above, the introduction of the plea "was invited by defense counsel."

Thus, in all matters here relevant, the action of the trial court fully comported with the standards enunciated in *United States v. King, supra*, as repeated in *United States v. Edwards, supra*.

We conclude therefore that the trial court did not abuse its discretion in permitting this evidence to come before the jury.

### C. *The 18 U.S.C. § 1001 Violation*

This code section provides as follows:

> Section 1001. *Statements or Entries Generally.* Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and wilfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same

> to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

■ Here, the appellants do not contend that there was insufficient evidence to prove that they had intentionally caused David Williams falsely to represent to the government agents that he was solely responsible for growing the marijuana crop on the Bell farm. Even if they did, however, the evidence is clearly sufficient to establish that they actively participated in a plan to cause Williams to "take the fall" if the marijuana farm was "busted." There was also evidence that Smith and Williams falsely backdated a sublease of the Bell property and that Williams had paid monthly rent to Smith for the farm at the time of the "bust." This was to create the impression that Williams, rather than Smith, was the lessee of the property. There was also evidence that Rush told Williams that he and his family would be killed unless Williams continued to take entire responsibility for the marijuana growing and sales. It is undisputed that Williams thereafter got in touch with state and federal narcotics agents and made a detailed statement falsely claiming to be the only one involved in the marijuana business at Bell.

It seems frivolous for appellants to contend that this evidence did not support a jury verdict that appellants were guilty of covering "up by [a] trick, scheme, or device a material fact or ... making or using [a] false writing or document knowing the same to contain [a] false, fictitious or fraudulent statement or entry." There was clearly a false or fraudulent trick and there was clearly a false writing or document used to establish appellants' lack of participation in the operation of the Bell farm.

We therefore conclude that the conviction on this count was fully warranted.

### D. *Smith's Conviction on Counts 2 and 10*

1. Count 2 charged that:

On or about January 1, 1985, and continuing until on or about September 11, 1985, in the Northern District of Florida, the defendants Thomas Lee Rush, Eunice Rebecca Smith a/k/a Becque Smith and others knowingly and intentionally did possess with intent to distribute and manufacture 50 kilograms or more of marijuana, a controlled substance, in violation of Section 841 of Title 21 of the United States Code.

Ms. Smith contends that there was insufficient evidence to submit to the jury the issue of her guilt under this count of the indictment.

■ At this time, Smith was married to Rush and was living on the property upon which a patch of marijuana was being grown. The lease for the property was in her name from January 1, 1985. She kept house for Rush and his children, some of whom were continually engaged in cultivating the marijuana plants. The crop produced substantially more than 50 kilograms of marijuana. During this time, Smith cooked meals and fed the family and gave pocket money to the younger members of the family who were engaged in growing the marijuana. The marijuana plants were within sight of the trailer in which they lived.

We conclude that there can be no doubt that she was in actual possession of the marijuana crop and that the crop was of sufficient quantity that a jury could properly infer that she intended to sell it. A reviewing court must draw all reasonable inferences in favor of the jury's verdict, *United States v. Bell*, 678 F.2d 547 (5th Cir.1982). We, therefore, conclude that there was sufficient evidence upon which the jury could find Smith guilty beyond any reasonable doubt.

2. Count 10 of the indictment charged:

On or about February 10, 1988, in the Northern District of Florida and elsewhere, the defendants, Thomas Lee Rush, Eunice Rebecca Smith, a/k/a Becque Smith, and Richard Raymond Williams knowingly and intentionally did possess with intent to distribute marijuana, a controlled substance, in violation of Section 841 of Title 21 of the United States Code.

■ Here again, Smith contends that there was insufficient evidence to permit the submission of this count to the jury. Proof concerning this count relates to a drug arrest on February 10, 1988. There was either direct evidence or evidence from which the jury could properly infer that on that day, Rush and Smith had driven to the trailer at Cowpen Lake with 108 pounds of marijuana in their car, the place where the federal agent, working under cover, had agreed to trade two kilograms of cocaine and $77,000 in cash for 108 pounds of high grade marijuana. When the undercover agents arrived, Rush and Smith were all out in the front yard with co-defendant Williams. Smith was sweeping the yard and Williams went to the gate to act as a guard and Smith disappeared. Rush and the agents went into the relatively unfurnished trailer. There, agents observed a set of scales and 108 pounds of marijuana on the kitchen table. Rush showed a large revolver, commenting that it was for their protection. At the time the deal was progressing, there was a noise in the adjoining room which Rush said was caused by his wife, Smith. The only firearm that was apparent in the kitchen area was Rush's large revolver. There was no furniture in the adjoining room in which Smith was waiting except a dresser. In addition to this evidence, it is clear that the jury could well have determined that raising and selling marijuana was the family business of Rush and his wife, Becque Smith. The government also contends that the jury could properly infer that Rush had left his handgun with Smith for his protection during the deal.

After the deal went down, and the parties were leaving for the purpose of picking up the cash, Rush and Williams were arrested by the agents. Smith was not arrested.

We conclude that on the evidence, with all inferences being resolved in favor of the verdict, there was sufficient evidence from which the jury could find Smith guilty of possession of the marijuana with intent to sell beyond a reasonable doubt.

## E. *The Sentencing of Smith*

Ms. Smith contends that the trial court improperly accepted the findings in the pre-sentence report (PSI) which resulted in an increase of three levels under guideline 3B1.1(b). Appellant recognizes that this is a finding of fact that is reviewable under the clearly erroneous standard. *U.S. v. Davis*, 868 F.2d 1390 (5th Cir.1989).

The PSI paragraph to which Smith objected read as follows:

> Adjustment for Role in the Offense: While Smith was subordinate to codefendant Rush in the overall conspiracy and transaction of February 10, 1988, she did maintain a position of management or supervision in that she supervised the marijuana cultivation crew, received and paid for supplies of methamphetamine, distributed methamphetamine, provided armed backup during the February 10, 1988 transactions and helped in the coverup of the 1985 Bell farm bust. Consequently, an increase of 3 levels is warranted.

The commentary to Section 3B1.1(b) includes the following statement:

> Factors the court should consider include the exercise of decision-making authority, the degree of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the planning or organization of the offense, the scope of the illegal activity, the nature and seriousness of the criminal activity, and the degree of control and authority exercised over others.

It will be noted that each of these elements mentioned is to be *considered* together with other facts, one of which, of course, is the opportunity of the trial court to observe all witnesses and judge their credibility. 18 U.S.C. § 3742(d).

Because much of the fact-finding by the trial court as to the PSI is based on its interpretation of the terms of the commentary, the court was required to determine what it considered to be an "exercise of decision-making authority" and "the degree of participation in the commission of the offense;" also, "the claimed right to a larger share of the fruits of the crime," when appellant Smith was married to appellant Rush, who all conceded was the principal organizer and manager of the acts charged in the conspiracy. Because the trial court must exercise its best judgment as to the application of the facts to these standards, its decision is entitled to one of deference on appeal. In fact, the statute dealing with appeal from sentences was amended effective on November 18, 1988 to include the following as part of 18 U.S.C. § 3742(e): "The court of appeals ... shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). Moreover, it is clear that as to some of the substantive acts, such as the sale of amphetamines and the weighing of several batches of marijuana, appellant Smith actually participated directly in the transaction.

Considering all of these facts, and the permissible inference that Ms. Smith was serving as an armed guard for the attempted sale in 1988, we cannot conclude that the trial court was clearly erroneous in accepting the facts stated in the PSI, which resulted in the enhancement.

## IV. CONCLUSION

We conclude that the trial court committed no reversible error. The judgments are therefore AFFIRMED.