[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14915

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 20, 2011
JOHN LEY
CLERK

D. C. Docket No. 08-00010-CR-1-SPM-AK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DIEGO CHOXJ CHA,
a.k.a. Lorenzo Sac,
WILLIAM J. ERICKSON,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Florida

_____

(June 20, 2011)

Before MARTIN and BLACK, Circuit Judges, and RESTANI,[*] Judge.

PER CURIAM:

_____

[*] Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

Diego Choxj Cha, also known as Lorenzo Sac ("Sac"), and William J. Erickson ("Erickson") appeal their convictions and sentences. A jury found Sac guilty of manufacturing or possessing with intent to distribute at least 100, but less than 1000, marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vii) and 18 U.S.C. § 2. The district court sentenced Sac to the mandatory sixty-month minimum term of imprisonment followed by four years of supervised release. See 21 U.S.C. § 841(b)(1)(B). Erickson was convicted of conspiracy to manufacture and possess with intent to distribute more than 100, but less than 1000, marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(vii) and 18 U.S.C. § 846; manufacturing and possessing with intent to distribute at least 100, but less than 1000, marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vii) and 18 U.S.C. § 2; and attempting to obstruct an official proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2. The district court sentenced Erickson to 88 months imprisonment. After careful review of the record and the parties' briefs, and having had the benefit of oral argument, we affirm Sac's and Erickson's convictions and sentences.

I.

Sac first argues that the district court erred in excluding two lay witnesses' testimony as to whether Sac knew what marijuana was and whether he knew it was

illegal.  We review evidentiary questions for abuse of discretion.  United States v. Brown, 415 F.3d 1257, 1264–65 (11th Cir. 2005).  We will not reverse because of an evidentiary ruling if the error was harmless.  United States v. Khanani, 502 F.3d 1281, 1292 (11th Cir. 2007).  A lay witness's testimony is "limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of [the rule on expert testimony]."  Fed. R. Evid. 701.  A lay witness's opinion is admissible "only if it is based on first-hand knowledge or observation . . . ."  United States v. Marshall, 173 F.3d 1312, 1315 (11th Cir. 1999).

The district court did not err in excluding the lay witnesses' testimony as to whether Sac knew what marijuana was or whether it was illegal.  Sac's personal knowledge of the identifying characteristics of marijuana and its illegality were not matters that were rationally based on the perceptions of these lay witnesses.  See Fed. R. Evid. 701.  Neither witness knew Sac personally nor had first-hand knowledge of his familiarity with marijuana at the time of the offense.  Sister Mary Waddell, a missionary who had worked in Guatemala, testified in general about the pervasive poverty and illiteracy in the part of the country in which Sac had lived.

3

Similarly, Christian Barrientos, a biologist, testified in general about the biodiversity of the plants in Guatemala. While these witnesses may have had knowledge of the people and area where Sac was from, Sac did not establish that they had first-hand knowledge of his particular familiarity with marijuana. By Sac's own admission, he left Guatemala and had been residing in the United States for at least several months before law enforcement found him in Williston, Florida living in a house filled with hundreds of marijuana plants and working to cultivate them. Because the lay witnesses' testimony about Sac's familiarity with marijuana was improper under Rule 701, the district court did not abuse its discretion in excluding it.

## II.

Sac next challenges the sufficiency of the evidence supporting his conviction for knowingly and intentionally manufacturing and possessing with intent to distribute more than 100 but less than 1000 marijuana plants. Specifically, Sac argues that the government failed to establish that he knew what marijuana was or that it was an illegal controlled substance. We review de novo whether the evidence was sufficient to sustain a conviction. United States v. Jiminez, 564 F.3d 1280, 1284 (11th Cir. 2009). We "view the evidence in the light most favorable to

4

the government and resolve all reasonable inferences and credibility evaluations in favor of the jury's verdict." United States v. Robertson, 493 F.3d 1322, 1329 (11th Cir. 2007) (quotation marks omitted). "We will not overturn a conviction on the grounds of insufficient evidence 'unless no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Wright, 392 F.3d 1269, 1273 (11th Cir. 2004) (quoting United States v. Christo, 129 F.3d 578, 579 (11th Cir. 1997)).

To obtain a conviction under § 841(a)(1), the government must prove beyond a reasonable doubt that the defendant knowingly or intentionally possessed marijuana with intent to manufacture, distribute, or dispense it. See 21 U.S.C. § 841(a)(1). "[T]he government must establish the existence of three elements: (1) knowledge (of one's possession); (2) possession of a controlled substance; and (3) intent to distribute that substance." United States v. Wilson, 183 F.3d 1291, 1299 n.13 (11th Cir. 1999). The government may establish "possession" by proving either actual or constructive possession. See United States v. Leonard, 138 F.3d 906, 909 (11th Cir. 1998). The intent to distribute may be inferred from the amount of drugs involved. United States v. Hernandez, 433 F.3d 1328, 1333 (11th Cir. 2005), cert. denied, 547 U.S. 1047, 126 S. Ct. 1634 (2006).

Viewing the evidence in the light most favorable to the government, there

was sufficient evidence to support Sac's conviction. The government established that Sac had been living and working at a residence in Williston, Florida that had been converted into a large-scale marijuana growing operation. When law enforcement executed a search warrant at that residence on April 9, 2008, they discovered Lorenzo Sac and his brother, Francisco Sac, hiding in a bathtub and found 917 marijuana plants growing in rooms throughout the house, including the bathroom where Sac was hiding. Law enforcement could smell the odor of marijuana emanating from the house. Law enforcement also found specialized lights, generators, air conditioners, diesel fuel, propane, potting soil and other equipment necessary for growing marijuana in the residence. Lorenzo and Francisco admitted that they were paid $500 per week to tend to and harvest the marijuana plants at this residence.

Sac argues that based on his testimony that he was not familiar with marijuana, no reasonable jury could have found him guilty beyond a reasonable doubt. We disagree. Sac testified that he did not know that the 917 plants in the residence were marijuana plants. The jury was free to find that Sac was not a credible witness and disbelieve Sac's assertions that he did not know what marijuana was or that it was illegal. See United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995) (explaining that a defendant's trial testimony "if disbelieved by

6

the jury, may be considered as <u>substantive evidence</u> of the defendant's guilt").

We therefore conclude that the evidence was sufficient to support Sac's conviction. <u>See</u> <u>United States v. Smith</u>, 893 F.2d 1269, 1274 (11th Cir. 1990) (sustaining conviction for knowingly and intentionally possessing with intent to distribute marijuana where defendant was living on property upon which a patch of marijuana was being grown and the marijuana plants were visible from the trailer in which defendant was living); <u>see also</u> <u>United States v. Coronel</u>, 750 F.2d 1482, 1487–88 (11th Cir. 1985) (sustaining conviction for possession with intent to distribute cocaine where law enforcement found defendant hiding near an incubator that contained cocaine and where smell of cocaine and ether was discernible).

## III.

Finally, Sac challenges the reasonableness of his sixty-month sentence. Sac's offense carries a sixty-month mandatory minimum sentence. <u>See</u> 21 U.S.C. § 841(b)(1)(B). However, Sac argues that he was entitled to a sentence lower than the statutory mandatory minimum sentence under the "safety valve" exception, 18 U.S.C. § 3553(f). "When reviewing the denial of safety-valve relief, we review for clear error a district court's factual determinations." <u>United States v. Johnson</u>, 375 F.3d 1300, 1301 (11th Cir. 2004). "We review <u>de novo</u> the court's legal

7

interpretation of the statutes and sentencing guidelines." Id.

"It is well-settled that a district court is not authorized to sentence a defendant below the statutory mandatory minimum unless the government filed a substantial assistance motion pursuant to 18 U.S.C. § 3553(e) or the defendant falls within the safety-valve exception of § 3553(f)." United States v. Castaing-Sosa, 530 F.3d 1358, 1360 (11th Cir. 2008). A defendant is eligible for the safety-valve exception only if, among other things, "the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ." 18 U.S.C. § 3553(f)(5). The burden is on the defendant to prove that he has met all of the safety-valve factors. See Johnson, 375 F.3d at 1302.

Sac has failed to establish that the district court erred in denying safety-valve relief. The district court found that Sac did not qualify for the safety valve exception because he had not fulfilled the "tell-all" requirement for receiving safety-valve relief insofar as he failed to provide the government with all the information and evidence that he had concerning the charged offense. See United States v. Yate, 176 F.3d 1309, 1310 (11th Cir. 1999) (discussing defendant's affirmative responsibility "to truthfully disclose to the government all information and evidence that he has about the offense and all relevant conduct" under the

8

safety-valve exception). For example, even though at least 917 marijuana plants were growing in the house where he lived, Sac provided the government with no information about the intended distribution of those plants. See Johnson, 375 F.3d at 1302–03 (holding that district court properly determined that defendant did not qualify for safety valve exception when he failed to disclose information about the intended distribution of the 273 marijuana plants he was cultivating). "Given the . . . large number of plants, the district court did not err in reasonably inferring that [Sac] was growing the marijuana for distribution." Id. at 1302. Accordingly, Sac did not qualify for the safety valve exception because he failed to provide the government with any information about the distribution.

We need not consider Sac's remaining challenges to the reasonableness of his sentence in light of our conclusion that the district court properly sentenced Sac to the sixty-month mandatory minimum sentence. See United States v. Gallegos-Aguero, 409 F.3d 1274, 1276 (11th Cir. 2005) ("We will reverse the district court [for a sentencing error] only if the error was harmful.").

IV.

Erickson contends that the district court erred in denying his motions for an evidentiary hearing under Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674.[1] He

[1] "Generally, a court's decision about whether to hold an evidentiary hearing lies within that court's sound discretion and will be reviewed only for an abuse of discretion. We have not

9

claims that statements in the search warrant affidavits regarding Francisco Sac providing law enforcement with a map of the 100th Street property were false. Erickson further asserts that the statements in the affidavits concerning utility records for that property were also false.

"To be entitled to a <u>Franks</u> hearing, a defendant must make a 'substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to a finding of probable cause.'" <u>United States v. Sarras</u>, 575 F.3d 1191, 1218 (11th Cir. 2009) (quoting <u>Franks</u>, 438 U.S. at 155–56, 98 S. Ct. at 2676). "[T]he substantiality requirement is not lightly met." <u>United States.v. Arbolaez</u>, 450 F.3d 1283, 1294 (11th Cir. 2006). As the Supreme Court has explained:

> To mandate an evidentiary hearing, the [defendant's] attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily

---

stated a precise standard of review for a district court's denial of a <u>Franks</u> hearing, and other circuits are split on the issue." <u>United States v. Arbolaez</u>, 450 F.3d 1283, 1293 (11th Cir. 2006) (citations omitted). Because we find no error under even a <u>de novo</u> standard of review, we need not determine which standard of review applies. <u>See id.</u>

explained.    Allegations of negligence or innocent mistake are insufficient.

Franks, 438 U.S. at 171, 98 S. Ct. at 2684.

The district court did not err in denying Erickson's request for a Franks hearing.  Erickson's attacks on the veracity of the affiants' statements were conclusory and unsupported by any proof.  Erickson did not submit an affidavit from Sac stating that he never provided law enforcement with a map of the 100th Street property.  Nor did Erickson offer any evidence establishing that the affiants' statements concerning utility records for that property were false.  Because Erickson failed to offer any proof in support of his claims, the district court's denial of his request for a Franks hearing was not error.

V.

Erickson also contends that the district court erred in denying his motion to suppress evidence obtained from his property located at 191st Avenue.  Erickson argues that the law enforcement obtained a search warrant for 191st Avenue by relying upon unlawful observations made during a warrantless entry of that property.  "Because rulings on motions to suppress involve mixed questions of fact and law, we review the district court's factual findings for clear error, and its application of the law to the facts de novo."  United States v. Jordan, 635 F.3d

11

1181, 1185 (11th Cir. 2011) (quotation marks omitted). "We also construe all facts in the light most favorable to the prevailing party in the district court—here, the government." United States v. Boyce, 351 F.3d 1102, 1105 (11th Cir. 2003).

The Fourth Amendment provides that: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. Amend IV. The Fourth Amendment, however, "is not implicated by entry upon private land to knock on a citizen's door for legitimate police purposes unconnected with a search of the premises." United States v. Taylor, 458 F.3d 1201, 1204 (11th Cir. 2006). "Absent express orders from the person in possession, an officer may walk up the steps and knock on the front door of any man's castle, with the honest intent of asking questions of the occupant thereof." Id. (quotation marks omitted).

Here, several officers walked up to Erickson's front door and knocked. Erickson came out and instructed the officers to leave his property. En route to Erickson's door, the officers observed a pile of harvested marijuana root bases approximately twenty-five yards from Erickson's residence and marijuana residue in a truck parked out front. The officers detained Erickson in the front yard while a search warrant for the property was obtained. From their vantage point in the yard, the officers could see inside of Erickson's residence and observed survelliance

12

monitors and insulation.

Erickson argues that the officers' observations violated his Fourth Amendment rights and tainted the the validity of the warrant issued to search his property. We disagree. The officers approached Erickson's residence to conduct a "knock and talk." See Taylor, 458 F.3d at 1204. Their plain view observations while properly on the property for that purpose do not constitute a constitutional violation. See id. For that reason, the inclusion of the officers' observations in the warrant affidavit did not taint the validity of the search warrant for Erickson's property.

## VI.

Erickson also contends that the prosecutor engaged in prosecutorial misconduct, violating his due process right to a fair trial. Ordinarily, "[w]e review claims of prosecutorial misconduct de novo because they involve a mixed question of law and fact." United States v. Schmitz, 634 F.3d 1247, 1259 (11th Cir. 2011). However, because Erickson raises his claim for the first time on appeal, we review only for plain error.[2] Id.

"To find prosecutorial misconduct, a two-pronged test must be met: (1) the

---

[2] Under the plain error standard of review, "(1) there must be error; (2) the error must be plain; (3) the error must affect the appellant's substantial rights; and (4) the error must seriously affect the fairness, integrity, or public reputation of judicial proceedings." United States v. Pantle, 637 F.3d 1172, 1174 (11th Cir. 2011) (quotation marks omitted).

13

remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991). "To establish prosecutorial misconduct for the use of false testimony, a defendant must show the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." United States v. McNair, 605 F.3d 1152, 1208 (11th Cir. 2010); see also United States v. Dickerson, 248 F.3d 1036, 1041 (11th Cir. 2001) (explaining that "[t]he materiality element is satisfied if the false testimony could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict" (quotation marks omitted)).

Erickson argues that the prosecutor committed prosecutorial misconduct when he elicited testimony from Agent Andrews concerning Florida Department of Revenue records from 2007 and 2008 showing that Erickson had no reported income. Erickson asserts that Andrews' testimony was misleading because he had other sources of income during those years that he was not required to report to the Florida Department of Revenue. He also claims that the prosecutor engaged in misconduct by offering conflicting testimony from Agents Andrews and Riley regarding where law enforcement found marijuana grow books on his properties.

Erickson has failed to establish plain error with respect to any of his claims

of prosecutorial misconduct. Agent Andrews' testimony concerning Erickson's Florida Department of Revenue records was not false. Erickson stipulated to the accuracy of those records at trial. To the extent that any discrepancy existed in the two agents' testimony about the location at which marijuana grow books were found, the discrepancy was not material. Agent Andrews testified that grow books were found in Erickson's office at his 191st. Avenue property. Agent Riley testified that two books were found in Erickson's office and that five books were found in a trailer at his 187th Street property. The discrepancy in the agents' testimony does not "undermine [our] confidence in the verdict." See Dickerson, 248 F.3d at 1042. For these reasons, we conclude that Erickson has failed to establish that the district court plainly erred in rejecting his claims of prosecutorial misconduct.

VII.

Erickson contends that the district court erred at sentencing in holding him accountable for 1,123 marijuana plants. Specifically, he argues that it was improper for the district court to hold him accountable for the 917 marijuana plants found at a property that his co-defendant, John Sager, owned. Erickson argues that the district court should not have taken those plants into account in calculating his guidelines range because they related to acquitted conduct. We review the district

15

court's interpretation of the sentencing guidelines de novo, and its factual findings for clear error. United States v. Jordi, 418 F.3d 1212, 1214 (11th Cir. 2005).

A district court may consider all relevant conduct in calculating a defendant's offense level. See United States v. Hamaker, 455 F.3d 1316, 1336 (11th Cir. 2006). Relevant conduct may include conduct for which the defendant was acquitted. See United States v. Duncan, 400 F.3d 1297, 1304 (11th Cir. 2005) (explaining that a district court may take into account acquitted conduct at sentencing as long as the government proves the conduct by a preponderance of the evidence and the sentence imposed does not exceed the statutory maximum authorized by the jury's verdict). In the case of jointly undertaken criminal activity, relevant conduct includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B) (Nov. 2008).

The district court did not clearly err in holding Erickson accountable for the 917 marijuana plants found on Sager's property. The record shows that Erickson and Sager were involved in a marijuana grow operation. The plants at Sager's property were "reasonably foreseeable" to Erickson as part of that jointly undertaken criminal activity. Erickson and Sager's colloboration in the grow operation was extensive. The government presented evidence establishing that

Erickson and Sager had similar structures on their properties in furtherance of the operation and co-owned a property. The district court did not err in holding Erickson accountable for the plants found at both his and Sager's properties.

For these reasons, we affirm Sac's and Erickson's convictions and sentences.

AFFIRMED.