MAXWELL, J.,
specially concurring:
¶ 34. I agree with the majority’s result and join in its conclusion that Harper’s failure to object serves as a procedural bar to our review of Harper’s co-conspirator, Debra Busby’s, testimony about her guilty pleas. But I write separately to discuss the propriety of the State’s use of a co-conspirator’s guilty plea during an accomplice’s direct examination. As stated in my concurrence in Foxworth v. State, I find this practice serves a proper eviden-tiary purpose when offered for permissible reasons. See Foxworth v. State, 96 So.3d 17, 20-22 (¶¶ 17-24) (Miss.Ct.App.2011) (Maxwell, J., specially concurring).
¶ 35. Before addressing the issue of preemptive use of plea agreements, I point out the apparent reason Harper’s trial attorney did not object to the testimony Harper now challenges was because Debra’s negotiated guilty pleas figured prominently into his defense strategy. The record shows he wanted the jury to be well aware of them. Indeed, it was Harper’s counsel — not the State — who first mentioned Debra’s guilty pleas. And he did so quite early in the trial during his opening statement, describing Debra’s guilty pleas to “conspiracy” and “sexual battery.” After Harper opened the door, Debra’s guilty pleas were in play to be mentioned by either side. Harper’s apparent logic in immediately highlighting his co-conspirator’s convictions was to suggest Debra’s perceived favorable negotiations and plea arrangements with the State resulted in, as he called it during his opening statement, “bought testimony” given as a “quid pro quo” for a shortened sentence.
¶ 36. Harper was certainly within his right to use this tactic to preview his credibility-based attack. As I have previously noted, I see nothing improper about the State or a defendant bringing up a co-conspirator’s plea agreement during opening statement, so long as the reasons serve *1164 a proper evidentiary purpose, such as suggesting bias, as Harper did here. Id. at 23 (¶¶22, 24). In my view, generally both sides are entitled to address accomplice plea agreements even as early as voir dire to probe for potential juror prejudice or bias:
The control of voir dire is largely left to the circuit court’s discretion, and as long as the judge is agreeable, questions surrounding a co-defendant’s guilty plea are fair game for both sides. Why should the defendant be restricted from eliciting from prospective jurors whether they are more likely to convict because a co-conspirator has plead guilty to the same charge? And in turn, the State should be permitted to inquire whether potential jurors would refuse to consider the testimony of a cooperating witness who testifies with the benefit of a plea agreement. Such inquiries focus on a central goal of voir dire — to uncover the prospective jurors’ bias or pre-conceived notions of guilt. A Missouri appellate court has recognized that “such voir dire questions are allowed as being relevant because, any time the State enters into a plea agreement with a witness, the issues of bias and self-interest arise, since plea agreements are ‘double-edged swords’ that ‘not only support a witness’s credibility by showing an interest to testify truthfully, but also impeach a witness’s credibility by showing an interest in testifying favorably for the government, regardless of the truth.’ ” State v. Golatt, 81 S.W.3d 640, 645 (Mo.Ct.App.2002) (quoting State v. Dudley, 51 S.W.3d 44, 54 (Mo.Ct.App.2001)).
Id. at 23 n. 2.
¶ 37. During the State’s case-in-chief, Debra testified about her own involvement in sexually molesting one of the minor victims and about witnessing Harper’s repeated sexual battery and molestation of both victims. The State did not broach Debra’s guilty pleas until her direct examination. And the prosecutor did so with minimal mentions of her 169-day incarceration resulting from her “conspiracy” and “sexual battery” guilty pleas. In no way did he imply her guilty plea or sentence should spill over to or demonstrate Harper’s guilt.
¶ 38. Furthermore, Harper’s opening statement signaled his intent to attack Debra’s credibility. And in cases where the co-conspirator testifies at trial and is “subject to the rigors of cross-examination,” as Debra was here, the State’s “disclosure of the guilty plea to blunt the impact of attacks on her credibility serves a legitimate purpose and is permissible.” United States v. Veltre, 591 F.2d 347, 349 (5th Cir.1979) (citing United States v. King, 505 F.2d 602, 607 (5th Cir.1974)). Indeed, after the State examined Debra about her guilty pleas and cooperation, as anticipated, Harper’s attorney cross-examined Debra, confronting her with her guilty pleas to only two counts of a multi-count indictment. Having faced thirty-five years’ imprisonment, Debra’s short sentence, which she admitted was negotiated upon her agreement to cooperate against Harper, was also prominently addressed by Harper’s attorney.
¶ 39. Because it was obvious Harper intended to impeach Debra’s credibility, I find it was proper for the State to blunt the impact of this tactic by addressing her guilty pleas during her direct examination. Such preemptive use of a co-conspirator’s plea agreement was permissible even had Harper not initially brought up Debra’s convictions.
FAIR, J., JOINS THIS OPINION. ISHEE, J., JOINS THIS OPINION IN PART.