877 F.2d 895
 UNITED STATES of America, Plaintiff-Appellee,
v.
Armando FUENTES, Carmelo De La Rosa-Ibarra, Diego Marzan
Julio, Miguel Marquez-Rodriguez, Juan
Garces-Vasquez, Denis Jose
Blanquicet-Guzman and Ariel
Antonio
Arenas-Arevalo,
Defendants-Appellants.
 No. 87-5991.
 United States Court of Appeals,
Eleventh Circuit.
 July 19, 1989.
 
 1
 Rene Palomino, Koch & Palomino, Glen Koch, Miami, Fla., for Fuentes.
 
 
 2
 Mario S. Cano, Coral Gables, Fla., for Rosa-Ibarra.
 
 
 3
 Blas E. Padrino, Miami, Fla., for Julio.
 
 
 4
 Daniel S. Gelber, Linda Collins Hertz, and Harriet Galvin, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.
 
 
 5
 Clifford B. Hark, Miami, Fla., for Garces-Vasquez.
 
 
 6
 Jorge A. Sibila, Miami, Fla., for Arenas-Arevalo.
 
 
 7
 Richard C. Gagliano, Pros. Atty., Miami, Fla., for Marquez-Rodriguez.
 
 
 8
 Thomas Almon, Miami, Fla., for Blanquicet-Guzman.
 
 
 9
 Appeals for the United States District Court for the Southern District of Florida.
 
 
 10
 Before RONEY, Chief Judge, and VANCE, Circuit Judge, and EVANS*, District Judge.
 
 ORINDA D. EVANS, District Judge:
 
 11
 Defendants/Appellants are seven crew members of a vessel seized by the United States Coast Guard. They appeal their convictions under the Maritime Drug Law Enforcement Act, 46 U.S.C.App. Sec. 1903(a) and (j), and 18 U.S.C. Sec. 2.
 
 
 12
 Around 2:30 A.M. on March 3, 1987, the Coast Guard cutter Cherokee, a ship over 200 feet in length with a 78 man crew, sighted on radar a vessel traveling north in international waters toward the Bahamas. It pursued the vessel, radioed it unsuccessfully and reached it around 5:00 A.M. Coastguardsmen observed an individual on the vessel throw a red suitcase into the ocean. The Cherokee stopped to retrieve the suitcase unsuccessfully, and then returned to the pursuit. By 6:00 A.M., the Cherokee again sighted the vessel. Coastguardsmen observed individuals throwing brown objects into the water. They spotted between 250 and 400 such objects, which appeared to be bales of marijuana, bobbing in the wake of the vessel. Most of the bales were recovered and destroyed at sea. Some were retained, and were definitively proved to be marijuana.
 
 
 13
 The name Black Sand was painted on the vessel's hull, but it flew no flag and bore no home port designation. As the Cherokee pulled near, its crewmembers observed individuals washing down the vessel's deck.
 
 
 14
 After coastguardsmen boarded the Black Sand, Appellant Rodriguez-Marquez, through a translator, informed them the boat was either Venezuelan or Bahamian and that it was coming from Panama to an island off the coast of Venezuela to load whiskey and cigarettes for a return trip to Panama. He said a "Gringo" hired all the crewmen and was with them on the boat until 6:00 P.M. on March 2, when he left in a small pleasure craft, taking the keys, registration and charts.
 
 
 15
 Coastguardsmen found no charts or registration documents on the boat; however, they discovered a folded Venezuelan flag on board. They also found that the radio worked, although the vessel had not responded to the Cherokee's earlier attempts to make radio contact. Less than 500 grams of marijuana were swept from the ship's several holds.
 
 
 16
 Coastguardsmen arrested everyone on board and took them to the U.S. Naval Base at Guantanamo Bay, Cuba. A federal grand jury sitting in Miami indicted all seven appellants for conspiracy to possess with intent to distribute and possession with intent to distribute at least 1,000 kilograms of marijuana while on board a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C.App. Sec. 1903(j) and 46 U.S.C.App. Sec. 1903(a) respectively.[1]
 
 
 17
 Defendants were tried by a jury in the federal court for the Southern District of Florida. All were found guilty on both counts. As is required by 46 U.S.C.App. Sec. 1903(g), Defendants were sentenced under the penalty provisions of section 1010 of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. Sec. 960.[2] Appellants Rosa-Ibarra, Blanquicet-Guzman, Marquez-Rodriguez and Fuentes each received concurrent ten year sentences. Ten years is the minimum sentence permitted by 21 U.S.C. Sec. 960 for possession with intent to distribute 1,000 kilograms of a mixture containing marijuana. Appellants Julio, Garces-Vasquez and Arenas-Arevalo received twenty years on each count, to run concurrently. Twenty years is the minimum sentence permitted by 21 U.S.C. Sec. 960 for possession with intent to distribute 1,000 kilograms of a mixture containing marijuana where the defendant has a prior drug conviction. Each of these defendants had a prior conviction for possession with intent to distribute multi-ton quantities of marijuana.
 
 
 18
 Appellants claim the trial court erred by failing to direct the jury to determine the amount of marijuana involved. They claim the court should have utilized a special verdict form whereby the jury could have made an alternative finding of possession of 100 kilograms of marijuana, as opposed to 1,000 kilograms, once the jury had determined the defendants guilty of the offense of possession with intent to distribute.
 
 
 19
 The court correctly declined to utilize the special verdict form. Neither 46 U.S.C.App. Sec. 1903(a) nor Sec. 1903(j), the substantive offense statutes involved, mentions a particular quantity of marijuana. This Circuit has recently held that "the precise quantity of marijuana is not an element of the substantive offense defined in 46 U.S.C.App. Sec. 1903(a)." United States v. Mena, 863 F.2d 1522, 1529 (11th Cir.1989). The holding in Mena applies equally to the language of Sec. 1903(j).
 
 
 20
 Appellants further assert that the court erred in failing to give a lesser included offense instruction. However, the record does not clearly reflect to what instruction Appellants refer. The record contains no written request for such instruction, and neither does it reflect a clear oral request. By definition, possession with intent to distribute 100 kilograms of marijuana is not a lesser included offense with respect to possession with intent to distribute 1,000 kilograms of marijuana, because as noted, the substantive statute does not specify any particular amount.
 
 
 21
 If Appellants' argument is that the court should have given an instruction with respect to the offense of simple possession, it is plain that such instruction was not warranted by the evidence. The only quantity referred to in the record which might arguably invoke such an instruction would be the several ounces of marijuana which the coastguardsmen swept from the ship's holds and which had been doused with diesel fuel, apparently as part of the clean up effort which occurred just before the guardsmen boarded the ship. No rational jury could have found that these scattered remnants constituted a separate lot of marijuana possessed for non-distribution purposes rather than being the remnants of a larger distribution quantity. Therefore, it was not error to fail to give a simple possession charge. See Keeble v. United States, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973).
 
 
 22
 Presumably, the trial judge determined at time of sentencing that the evidence had shown the possession of 1,000 kilograms of marijuana or more. The orders of judgment and commitment as to each Appellant reflect, implicitly at least, that he did. As Appellants have not asserted that the court improperly rejected any argument they made at the sentencing hearing regarding the amount of marijuana, and indeed have failed even to furnish a transcript of the hearing, Appellants have abandoned any claim they might have that the court's determination was erroneous. However, we note that the trial evidence appears to abundantly support a determination that Appellants in fact possessed marijuana well in excess of 1,000 kilograms.[3]
 
 
 23
 Defendants also appeal the trial court's denial of their motion to dismiss for lack of venue. Defendants contend that under 46 U.S.C.App. Sec. 1903(f) venue for charges such as these lies "in the United States district court at the point of entry where that person enters the United States, or in the United States district court of the District of Columbia." 46 U.S.C.App. Sec. 1903(f). They argue that since there is no district court in Guantanamo Bay, venue properly lies in the federal district court of the District of Columbia, which customarily handles matters arising at Guantanamo Bay.
 
 
 24
 This argument is meritless. Because the United States Naval Base at Guantanamo Bay does not have a federal district court, it is not a district within the meaning of 46 U.S.C.App. Sec. 1903(f).[4] Harlow v. United States, 301 F.2d 361 (5th Cir.), cert. denied, 371 U.S. 814, 83 S.Ct. 25, 9 L.Ed.2d 56 (1962). Section 1903(f) generates venue only in places that have district courts. Otherwise venue is appropriate in the district into which a defendant is brought after his arrest on the high seas. See United States v. Ahumedo-Avendano, 872 F.2d 367, 372 (11th Cir.1989); United States v. Crews, 605 F.Supp. 730, 735 (S.D.Fla.1985), aff'd sub nom, United States v. McGill, 800 F.2d 265 (11th Cir.1986). The superseding indictment states that Dade County was the first place Defendants were brought in this country.
 
 
 25
 Appellants' challenge to jurisdiction based on a claim that the Black Sand was a Venezuelan vessel is likewise futile. When the Coast Guard stopped the Black Sand, it flew no flag. No documents verifying its nationality were found on board. No home port was inscribed on its hull. When the Coast Guard inquired about the vessel's nationality, the crewman acting as spokesman replied that it was either Bahamian or Venezuelan.
 
 
 26
 The exercise of jurisdiction was appropriate because vessels without nationality are subject to the jurisdiction of the United States. 46 U.S.C.App. Sec. 1903(c)(1)(A). For the purposes of Sec. 1903, a vessel without nationality includes "any vessel aboard which the master or person in charge fails, upon request of an officer of the United States empowered to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel." 46 U.S.C.App. Sec. 1903(c)(2)(B). A claim of registry or nationality may be made by showing documents evidencing the boat's nationality, by flying its ensign or flag or with a verbal claim of nationality by the master or person in charge. 46 U.S.C.App. Sec. 1903(c)(3). No one on the Black Sand made such a claim.
 
 
 27
 Appellants' contention that the evidence is insufficient to support their convictions also must fail. They argue that the government failed to prove conspiracy, knowledge, intent to distribute or possession of marijuana. In addition, they contend the government only proved the presence of 500 grams of marijuana which was swept from the holds of the Black Sand.
 
 
 28
 The standard of reviewing the verdict on sufficiency of the evidence grounds is whether the evidence, viewed in the light most favorable to the government, proved Defendants' guilt beyond a reasonable doubt. United States v. Ayarza-Garcia, 819 F.2d 1043, 1046 (11th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 465, 98 L.Ed.2d 404 (1987). Conspiracy may be inferred when crewmen are on a vessel where the presence of contraband is obvious. United States v. Gonzalez, 810 F.2d 1538, 1543 (11th Cir.1987). Where large quantities of contraband are on a small vessel "it is most unlikely that the person on board will be ignorant of its presence." United States v. Cruz-Valdez, 773 F.2d 1541, 1546 (11th Cir.1985), cert. denied, 475 U.S. 1049, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986).
 
 
 29
 The jury was shown a sample bale as well as photos and diagrams of the boat's storage space. It heard testimony that the Black Sand was approximately seventy feet long and hundreds of bales of marijuana floated in its wake. Witnesses attested that at least four unidentified crew members threw bale-shaped objects overboard while others were seen washing down the deck. In light of these facts, the jury's determination that each of the seven crew members conspired to possess and possessed marijuana with intent to distribute must be upheld.
 
 
 30
 Appellant Fuentes argues that the prosecutor impermissibly vouched for a government witness in his closing argument.[5] A review of the contested language in context reveals that the government's attorney was properly arguing the credibility of the witness based on the evidence in the record.
 
 
 31
 Appellants' argument that the wrong mandatory minimum sentencing standards were applied is also unfounded. The district court correctly applied 46 U.S.C.App. Sec. 1903(g) by employing the 1986 minimum mandatory sentencing provisions set forth in 21 U.S.C. Sec. 960, rather than the out-of-date 1970 provisions.
 
 
 32
 The remaining claims of error do not warrant discussion and are rejected.
 
 
 33
 For the reasons set forth above, the judgment appealed from is AFFIRMED in its entirety.
 
 
 
 *
 Honorable Orinda D. Evans, U.S. District Judge for the Northern District of Georgia, sitting by designation
 
 
 [1]
 Section 1903(j) states:
 Any person who attempts or conspires to commit any offense defined in this chapter is punishable by imprisonment or fine, or both, which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.
 Section 1903(a) states:
 It is unlawful for any person on board a vessel of the United States, or on board a vessel subject to the jurisdiction of the United States, to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance.
 
 
 [2]
 Section 1903(g) states in relevant part:
 (1) Any person who commits an offense defined in this section shall be punished in accordance with the penalties set forth in section 1010 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. Sec. 960).
 
 
 [3]
 One government witness testified that he saw 250 to 300 burlap packages floating in the Black Sand's wake. He stated no other vessels were in the area. Another witness, who was assigned to recover and destroy the bales floating in the water, attested to observing about 400 identically packaged bales which all weighed about the same. One of these bales was entered into evidence. The judge allowed the bale to be taken into the jury room during its deliberations after the defense attorneys raised the issue of the marijuana's weight. Appellants stipulated that the bale weighed approximately 27.65 kilograms (around 60 pounds). This evidence would support a finding that between 6,912.5 and 11,060 kilograms were involved
 
 
 [4]
 46 U.S.C.App. Sec. 1903(f) states:
 Any person who violates this section shall be tried in the United States district court at the point of entry where that person enters the United States, or in the United States District Court of the District of Columbia.
 
 
 [5]
 The language at issue is italicized in the following passage:
 If you watched these individuals and you observed them, you say perhaps Seaman Pray was almost shaking with nervousness when he first testified because it is a very nerve wracking experience to come in here with big ceilings and the Judge sitting up here and twelve to fourteen people that he doesn't really know, and begin to testify about events that occurred a few months ago, but if you listened to him, his testimony was very forthright. It was very honest. He told you the truth.
 When he was not sure, he told you he wasn't sure. That is what every one of those individuals told you. If they were trying to lie don't you think that Seaman Pray would have told you he saw 390 bales coming off the boat?