**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Gordon Parker REVEL, a/k/a Park,
William F. Pullam, a/k/a Smokey,
Defendants-Appellants.**

No. 90-3967.

United States Court of Appeals,
Eleventh Circuit.

Sept. 3, 1992.

---

William Garvin, III, Joe Jacobs, Tallahassee, Fla., for defendant-appellant Gordon Parker Revel.

Clifford L. Davis, Tallahassee, Fla., for defendant-appellant William F. Pullam.

Charles S. White, Asst. U.S. Atty., Tallahassee, Fla., for plaintiff-appellee U.S.

Before EDMONDSON, Circuit Judge, and RONEY*, and GIBSON**, Senior Circuit Judges.

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** The Honorable Floyd R. Gibson, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

FLOYD R. GIBSON, Senior Circuit Judge:

William F. Pullam and Gordon Parker Revel appeal their convictions for conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a), 846, and possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2. We affirm.

## I. BACKGROUND

In May of 1988, Pullam became involved in a conspiracy to distribute cocaine in Liberty, Calhoun and Leon counties, all of which are located in northern Florida. Pullam obtained cocaine in ¼ and ½ kilogram quantities from a broker in southern Florida who worked for Teresa Medina, a Columbian national who was also charged in the indictment. Pullam would then distribute one to two ounce quantities to local customers and supply larger quantities to other low level distributors in the area, including George Silas Summerlin, Steve Campbell and Gary Keaver. As early as November 1988, Revel also began distributing small quantities of cocaine, eventually becoming involved with Pullam in the spring of 1989. Revel recruited Mary Smith to travel with Pullam and her small child in order to appear as a family traveling to southern Florida; in reality, Pullam was meeting his drug sources and transporting the kilograms of cocaine back to northern Florida. Smith and Pullam continued to make these trips until they were arrested on December 13, 1989 for selling a kilogram of cocaine to a government informant.

Smith agreed to cooperate with the government and detailed various transactions involving Pullam, Revel and various low-level distributors who had been involved in the conspiracy to transport cocaine. Smith also helped police obtain recorded conversations with these individuals and agreed to wear a transmitting device to record a meeting with Revel. At the meeting, Smith and Revel discussed past and future drug deals until Revel became suspicious and asked Smith if she was wearing a body bug. As law enforcement agents approached, Revel grabbed the tape recording device off of Smith, fled the scene, and eventually turned himself in to authorities two weeks later.

Based on these facts, a jury found Pullam and Revel guilty of conspiracy to possess with intent to distribute cocaine. At sentencing, the court[1] found that the Presentence Report accurately reflected the amount of cocaine involved, an amount in excess of 15 kilograms, and set the base offense level at 34. The court then added four points to each of the appellant's offense level for their role as an organizer or leader of the conspiracy, and two points for obstruction of justice. These findings resulted in both defendants having an offense level of 40, and, based on their criminal histories, the court sentenced Pullam to 365 months and Revel to 330 months. Both appeal.

## II. DISCUSSION

### A. Sufficiency of the Evidence

■ Revel argues there was insufficient evidence to sustain his conviction due to a longstanding mental condition that prevented him from forming the specific intent to enter the conspiracy. Sufficiency of the evidence is a question of law subject to de novo review by this court. *United States v. Mieres–Borges*, 919 F.2d 652, 656 (11th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1633, 113 L.Ed.2d 728 (1991). In this case, the government was required to prove that Revel had "deliberate, knowing and specific intent to join the conspiracy." *United States v. Kelly,* 888 F.2d 732, 740 (11th Cir.1989) (quoting *United States v. Jenkins*, 779 F.2d 606, 609 (11th Cir.1986)). We will not reverse a conviction for insufficiency of the evidence "unless after reviewing the evidence in the light most favorable to the government we conclude that no reasonable trier of fact could find proof of guilt beyond a reasonable doubt." *United*

1. The Honorable William Stafford, United States District Judge for the Northern District of Florida.

*States v. Bennett*, 848 F.2d 1134, 1138 (11th Cir.1988).

■ Pullam argues his abnormal mental condition could have prevented him from forming the specific intent to enter the conspiracy. Although Revel's physician, Dr. Madsen, testified to Revel's history of schizophrenia and the possibility that his mental condition could affect his ability to form the requisite intent, there was no evidence in the record that his condition did in fact prevent him from forming the specific intent to join the conspiracy.[2] To the contrary, evidence in the record showed that Revel thought of himself as a "kingpin" who was the financial backer and leader of the conspiracy. Witnesses at trial also stated that Revel was a knowing and willing participant who took pride in his role as a leader in the conspiracy. After carefully reviewing the evidence in the light most favorable to the government, we hold a jury could reasonably conclude that Revel had the deliberate, knowing and specific intent to join the conspiracy.

### B. Jury Instructions

■ Pullam argues the district court erred in instructing the jury that the quantity of cocaine alleged in the indictment was not an element of the offense the government was required to prove at trial. He argues that by allowing him to base his defense on the theory that he was only a "small time, two bit backwoods drug dealer trading and hustling to support a habit," the government and the court made quantity a relevant issue at trial. We disagree. The "prosecution is only required to prove beyond a reasonable doubt all of the elements *included in the definition of the offense* of which the defendant is charged." *United States v. Cross*, 916 F.2d 622, 623 (11th Cir.1990) *cert. denied*, — U.S. —,

111 S.Ct. 1331, 113 L.Ed.2d 263 (1991) (citation omitted) (emphasis added in *Cross*). As a result, the government was only required to prove beyond a reasonable doubt that Pullam knowingly or intentionally distributed or possessed with intent to distribute a controlled substance. *See* 21 U.S.C. §§ 841(a), 846. Because the nature and quantity of controlled substances are relevant only to sentencing, the court did not err in instructing the jury that the government was not required to prove the five kilogram amount alleged in the indictment. *See United States v. Williams*, 876 F.2d 1521, 1525 (11th Cir.1989); *United States v. Fuentes*, 877 F.2d 895, 899 (11th Cir.), *cert. denied*, 493 U.S. 943, 110 S.Ct. 347, 107 L.Ed.2d 335 (1989).

■ In the alternative, Pullam argues the court erred in not giving a lesser included offense instruction to allow the jury to convict Pullam for an amount less than the five kilogram amount alleged in the indictment. He contends he was entitled to an instruction to the jury because quantity became a relevant issue at trial. Again, because the nature and quantity of cocaine are relevant only to sentencing and do not constitute elements of a lesser included offense, we hold the court correctly denied Pullam's proposed lesser included offense instruction. *Williams*, 876 F.2d at 1525.

### C. Application of the Guidelines

Pullam and Revel argue the district court erred in enhancing their offense level by four levels, under Section 3B1.1 of the United States Sentencing Guidelines ("U.S.S.G"), for their role as organizers or leaders of a criminal enterprise involving five or more participants.[3] The court considers the following factors in determining whether the Guideline is applicable:

the exercise of decision making authority, the nature of participation in the com-

---

**2.** *See United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir.1990) (court's exclusion of psychiatric evidence affirmed on appeal where defendant failed to prove how evidence that she had been diagnosed as schizophrenic on two occasions and was "receiving some sort of undisclosed psychological counseling at the time the charged offenses took place" demonstrated that she was unable to form specific intent to distribute cocaine).

**3.** Section 3B1.1(a) provided:

If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by *4* levels.

U.S.S.G. § 3B1.1(a) (1989) (emphasis in original).

mission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 application note 3 (1989). These factors are to be *"considered* together with other facts, one of which, of course, is the opportunity of the trial court to observe all witnesses and judge their credibility." *United States v. Smith,* 893 F.2d 1269, 1275 (11th Cir.1990) (emphasis in original). Because the district court must interpret the factors stated in the commentary, and "must exercise its best judgment as to the application of the facts to these standards, its decision is entitled to one of deference on appeal." *Id.*

██ Pullam[4] and Revel argue the evidence presented to the court does not support a finding that they were organizers or leaders of a criminal enterprise involving five or more "participants"[5] within the meaning of Section 3B1.1. They argue the existence of buyer/seller relationships between individuals does not establish a conspiracy, and there is no evidence that they acted as leaders or organizers of any individuals. Although we agree that a mere buyer/seller relationship is inadequate to link individuals to a conspiracy, *United States v. Brown,* 872 F.2d 385, 391 (11th Cir.), *cert. denied,* 493 U.S. 898, 110 S.Ct. 253, 107 L.Ed.2d 203 (1989), the evidence in this case shows that both Revel and Pullam were leaders of a network of "participants."

██ In order to be considered an organizer or leader within the meaning of the Guidelines, the defendant need not be the sole leader or a kingpin of the conspiracy. *United States v. Griffin,* 945 F.2d 378, 385

(11th Cir.1991) (citation omitted). Evidence at trial indicated that Revel and Pullam both exercised decision-making authority and control over the operation, and travelled either by themselves or with other individuals to southern Florida to meet their sources. The district court found the drug organization was somewhat extensive and involved more than five individuals, both in northern and southern Florida. Concerning Revel's claim that he was not an organizer or leader, the court found that Revel had decision-making authority, recruited Smith to act as an accomplice, arranged meetings, acted as a financial backer, and had significant control over the operation. We hold the evidence in the record showed the conspiracy involved five or more participants, and the court's finding that Revel and Pullam acted as organizers or leaders under Section 3B1.1 was not clearly erroneous. *United States v. Clark,* 889 F.2d 1056, 1057 (11th Cir.1989) (per curiam).

██ Revel also argues the court erred in increasing his offense level by two levels for obstruction of justice under Section 3C1.1 of the Guidelines.[6] When Revel was sentenced, this section applied without qualification to defendants who attempted to destroy or conceal material evidence. U.S.S.G. § 3C1.1 application note 1(a) (Nov. 1, 1989). The court found that Revel obstructed justice by fleeing the scene with a government evidence-gathering device and remaining in hiding for two weeks. Again, we review the district court's findings of fact under the clearly erroneous standard, giving due deference to the court's application of the Guidelines to the facts. *United States v. Brokemond,* 959 F.2d 206, 210 (11th Cir.1992). But because this also involves the interpretation of scope of the Guideline, we conduct a de novo review to determine whether the Guideline may properly be applied to the facts. *United States*

---

**4.** Pullam concedes his role as an organizer or leader but argues the enterprise did not involve five or more participants.

**5.** A participant is defined as "a person who is criminally responsible for the commission of the offense, *but need not have been convicted."* U.S.S.G. § 3B1.1 application note 1.

**6.** Section 3C1.1 provided:

If the defendant willfully impeded or obstructed, or attempted to impede or obstruct, the administration of justice during the investigation or prosecution of the instant offense, increase *the offense level by 2 levels.*

U.S.S.G. § 3C1.1 (1989) (emphasis in original).

*v. Burton,* 933 F.2d 916, 917 (11th Cir.1991) (citations omitted).

■■■■■ To justify an enhancement under Section 3C1.1, the defendant must act "willfully", which has been interpreted to mean the defendant must "consciously act with the *purpose* of obstructing justice." *Burton,* 933 F.2d at 918 (emphasis in original) (citations omitted). The court found that Revel clearly understood that Smith was taping the conversation and thought that by taking the tape recording device, he was destroying evidence that would be material at trial. Revel argues the device itself is not material evidence; thus, he should not receive an enhancement based solely on his flight from the scene. We disagree. The key determination is Revel's intent at the time he took the device—when Revel ripped the recording device off Smith's body, he purposefully intended to destroy material evidence against him. The fact that he mistakenly took a transmitter, and not the tape itself, is irrelevant because he could "have reasonably foreseen that the natural and probable" consequences of his intended actions would obstruct the government's investigation. *See United States v. Fields,* 838 F.2d 1571, 1573 (11th Cir.1988). Furthermore, after attempting to destroy the evidence, Revel fled the scene and remained in hiding for two weeks before turning himself into law enforcement authorities. All of these factors considered, we hold the district court did not err in enhancing Revel's offense level for obstruction of justice.[7]

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

**7.** Courts have considered a variety of factors in determining whether a defendant has obstructed justice by destroying material evidence. *See United States v. Cain,* 881 F.2d 980, 982 (11th Cir.1989) (per curiam) (obstruction of justice enhancement allowed where defendant attempted to conceal stolen checks by throwing them under parked car); *United States v. Galvan-Garcia,* 872 F.2d 638, 641 (5th Cir.), *cert. denied,*

493 U.S. 857, 110 S.Ct. 164, 107 L.Ed.2d 122 (1989) (obstruction of justice enhancement where defendant attempted to conceal marijuana by tossing it out of window during chase); *United States v. Dortch,* 923 F.2d 629 (8th Cir. 1991) (obstruction of justice increase for tossing cocaine out of window while attempting to flee scene).