[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11637

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MAXWELL GARVICE JOHNSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:20-cr-00107-CEM-EJK-1

_____

Before JORDAN, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Maxwell Garvice Johnson appeals his 360-month sentence, imposed after he pled guilty to conspiracy to distribute or possess with intent to distribute methamphetamine. He argues that the district court clearly erred in applying sentencing enhancements for his leadership role in the conspiracy and for his possession of a pistol found during the search of his home. We find no error and affirm the sentence.

## I

Mr. Johnson, his girlfriend Gena Walker, and seven others were indicted for their participation in a narcotics conspiracy. Authorities seized drugs and drug proceeds from searches conducted of Ms. Walker's hair salon business and of the home that she and Mr. Johnson shared. In the master bedroom of their home, authorities found a 9-millimeter pistol. It was underneath the mattress but visible.

Mr. Johnson pled guilty to conspiracy to distribute or possess with intent to distribute methamphetamine. Following his guilty plea, the United States Probation Office recommended a four-level enhancement for his leadership role in the conspiracy pursuant to U.S.S.G. § 3B1.1(a) and a two-level enhancement for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1). Mr. Johnson's counsel objected to the application of these two

enhancements, arguing that he was a supplier, not a leader, and that he did not own or have knowledge of the firearm.

The district court overruled the objections and made a series of findings to support the application of both enhancements. It found that, during some recorded phone calls, Mr. Johnson gave instructions to his co-conspirators, some of whom referred to him as "boss"; that the amount of cash and contraband attributed to Mr. Johnson was larger than that attributed to any other defendant except for Robert Hamilton; that Mr. Johnson admitted he was the owner of a stash house at Epic Apartments; and that authorities found six cellphones within Mr. Johnson's reach in his bedroom. As noted earlier, the authorities also found a loaded 9-millimeter pistol within arm's reach of where Mr. Johnson and Mr. Walker had slept.

## II

We review a district court's factual findings at sentencing for clear error. *See United States v. Caraballo*, 595 F.3d 1214, 1231 (11th Cir. 2010) (leadership-role enhancement); *United States v. Alfred*, 144 F.3d 1405, 1420 (11th Cir. 1998) (firearm-possession enhancement).

## III

We first address Mr. Johnson's argument that the district court's application of the leadership enhancement constituted clear error. Relying on Eleventh Circuit cases, Mr. Johnson argues that he was merely a seller, and not a leader or organizer of the

conspiracy. *See* Initial Br. at 20-21 (citing *United States v. Maxwell*, 34 F.3d 1006, 1012 (11th Cir. 1994) (application of the leadership enhancement is inappropriate where "there was no evidence of anything other than a seller/buyer relationship") and *United States v. Alred*, 144 F.3d 1405, 1420-21 (11th Cir. 1998) (same)). His argument, however, ignores the district court's many findings of fact that support its application of the leadership enhancement.

The Sentencing Guidelines call for a four-level enhancement where the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). District courts consider these factors when determining whether a defendant acted as a leader or organizer:

> (1) the exercise of decision making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others.

*United States v. Caraballo*, 595 F.3d 1214, 1231 (11th Cir. 2010) (quoting U.S.S.G. § 3B1.1, cmt. n. 4). These factors are merely considerations, and every factor need not apply. *See id.*

Here, the district court found that (1) Ms. Johnson "was clearly giving out instructions per surreptitiously recorded phone calls[,]" and during those calls he was referred to as "boss"; (2) Mr. Johnson was "associated with" a "large amount of cash" which was disproportionate compared to the other co-conspirators except for Mr. Hamilton; (3) Mr. Johnson owned a stash house and only he and Mr. Hamilton owned stash houses and (4) Mr. Johnson admitted to being peers with Mr. Hamilton, who had already been found to be a leader or organizer under U.S.S.G. § 3B1.1(a). We consider each finding in turn.

## A

Mr. Johnson argues that the district court clearly erred in finding, by a preponderance of the evidence, that he was directing others. We disagree.

In making this finding of fact, the district court relied on transcripts of specific phone calls in which Mr. Johnson instructed others regarding how much product to supply. During one of these phone calls, a co-conspirator who was confused about the quantity of drugs that he should have supplied stated "[T]hat's all you told me to give him boss. I was following instructions." In another phone call, Mr. Johnson counseled a co-conspirator about how to better predict the quantity of drugs that a repeat customer would need. Mr. Johnson said, "But I am still sending you. You know she's going to call and if she calls one time she's call four to five times that day. That's guaranteed locked in."

Based on these and other phone calls, the district court found that Mr. Johnson gave out instructions to co-conspirators. The district court did not clearly err in making this finding. *See United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012) ("[W]e will not disturb a district court's findings unless we are left with a definite and firm conviction that a mistake has been committed.") (internal quotation marks and citation omitted)).

Mr. Johnson also argues that district court erroneously relied on his nickname—"boss"—which he says was not used to indicate leadership, but just to show respect. According to Mr. Johnson, his characterization as "boss" does not control whether the leadership enhancement applies because the commentary to § 3B1.1 says so.

The Sentencing Guideline note cited by Mr. Johnson states that the use of a nickname like "boss" is not controlling "in distinguishing a leadership and organizational role from one of mere management or supervision." U.S.S.G. § 3B1.1, cmt., n. 4. In other words, the use of such a nickname does not control whether a defendant qualifies for a four-level role enhancement as "an organizer or leader" or a three-level enhancement as "a manager or supervisor." U.S.S.G. § 3B1.1(a), (b). But this does not mean that the use of the nickname "boss" is completely irrelevant to the application of a role enhancement under § 3B1.1. Although we agree that calling a conspirator "boss" alone does not control, the district court did not base its application of the leadership enhancement on this one fact. *See United States v. Dixon*, 901 F.3d 1322, 1348 (11th Cir.

2018) (affirming the leadership enhancement's application because it was based on specific findings of fact and acknowledging that being called "boss" is not controlling).

## B

The district court also found that Mr. Johnson profited more than his co-conspirators except for Mr. Hamilton. Mr. Johnson does not challenge this finding as clearly erroneous, and indeed seemingly agrees that he made more than his fellow dealers. Instead, he argues that this finding only proves that he was a wholesaler who sold a greater volume of narcotics than the others, arguing that it is "entirely conceivable" that he acted as a wholesaler.

The ability to conceive of a different explanation for Mr. Johnson's disproportionate profit does not render this finding irrelevant to the district court's ultimate determination that Mr. Johnson was a leader. *See United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012) (explaining that where the facts "give[ ] rise to two reasonable and different constructions, the factfinder's choice between them cannot be clearly erroneous"). And courts may consider evidence that a defendant profited more than any other person convicted in a criminal scheme in imposing leadership enhancements. *See United States v. Crabtree*, 878 F.3d 1274, 1290 (11th Cir. 2018) (affirming imposition of leadership enhancement based in part on the fact that he profited more than all but one of his co-conspirators). *Cf. United States v. Martinez*, 584 F.3d 1022, 1028 (11th Cir. 2009) (reversing the district court's leadership enhancement in part because the defendant did not claim a larger

share of the fruits of the crime). The evidence seized and photographed at Mr. Johnson's home shows that he had approximately $50,000 as well as a Maserati, which was much more than the amounts found at his co-conspirators' homes.

The district court did not clearly err in finding that Mr. Johnson profited more than most of his co-conspirators. Nor did it err in considering the disproportionate distribution of cash in making a leadership determination.

## C

The district court found that Mr. Johnson owned one of the two stash houses used in the conspiracy. Again, Mr. Johnson does not challenge this finding as clearly erroneous and instead argues that the district court erred in considering this fact because stash house ownership is not articulated in the Sentencing Guidelines as a factor for determining whether to apply the leadership enhancement. *See* U.S.S.G. § 3B1.1, cmt. 4. *See also Dixon*, 901 F.3d 1322. This argument is not persuasive.

Mr. Johnson's ownership of the two stash houses is relevant to the second factor—the nature of his participation in the commission of the offense—and the district court did not err in considering evidence pertaining to Mr. Johnson's overall role and conduct. We agree that a leadership enhancement cannot be based solely on ownership of a stash house because § 3B1.1 "requires the exercise of some authority in the organization, the exertion of some degree of control, influence, or leadership." *United States v. Martinez*, 584

F.3d 1022, 1026 (11th Cir. 2009).  But here the district court did not apply the leadership enhancement solely based on this finding.  Instead, the district court considered Mr. Johnson's ownership and control of the stash house, together with its findings that Mr. Johnson gave instructions to his co-conspirators who referred to him as boss, that he had profited more than most of his co-conspirators, and that Mr. Hamilton was his peer.

## D

Mr. Johnson argues that Mr. Hamilton's role as a leader should have no bearing on Mr. Johnson's sentence, even though Mr. Johnson admitted he was Mr. Hamilton's "peer" and that they were "on the same level."  The district court reasoned that because it had previously applied a leadership enhancement to Mr. Hamilton's sentence, it should also apply the leadership enhancement to his peer.

The district court did not err in considering the relative participation of all co-conspirators to determine which, if any, qualified for a leadership role enhancement.  As we have explained, there can be more than one leader of a conspiracy. *See United States v. Revel*, 971 F.2d 656, 660 (11th Cir. 1992) ("In order to be considered an organizer or leader within the meaning of the Guidelines, the defendant need not be the sole leader or a kingpin of the conspiracy . . . Evidence at trial indicated that Revel and Pullman both exercised decision-making authority and control over the operation").

## IV

Next, we consider Mr. Johnson's argument that the district court clearly erred in applying the two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm because he was not the owner of the firearm, made no use of it, and did not have knowledge of it. Again, we disagree.

The Sentencing Guidelines provide for a two-level enhancement when, in connection with the drug offense charged, a defendant possesses a dangerous weapon. To apply the firearms enhancement, "[t]he government bears the initial burden of showing, by a preponderance of the evidence, that a firearm was 'present' at the site of the charged conduct or that the defendant possessed it during conduct associated with the offense of conviction." *United States v. George*, 872 F.3d 1197, 1204 (11th Cir. 2017). Once the government meets this initial burden, the burden shifts to the defendant to demonstrate that the connection between the weapon and the charged offense was "clearly improbable." *United States v. Audain*, 254 F.3d 1286, 1289 (11th Cir. 2001). *See also* U.S.S.G. § 2D1.1, cmt. n.11 ("The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."). "In effect, the government benefits from a rebuttable presumption that a firearm, if present—just present, not present in proximity to drugs—is connected with the offense." *United States v. Carillo-Ayala*, 713 F.3d 82, 90 (11th Cir. 2013) (internal quotation marks omitted).

Mr. Johnson made no effort to rebut that presumption and provided no evidence that the connection between the weapon and the charged offense was "clearly improbable." He argued instead that, since the government had not met its initial burden, he was not required to provide evidence that the connection was clearly improbable.

The government produced evidence that, when officers executed a search warrant at the home of Mr. Johnson and Ms. Walker, they found a fully loaded 9-millimeter firearm with a magazine that contained 11 rounds of ammunition within arm's reach of where Mr. Johnson slept. The officers also found two boxes of additional ammunition, six cell phones, two digital scales, and approximately $50,000 in cash.

Proximity between guns and drug-related items is enough to meet the government's initial burden. *See United States v. Hall*, 46 F.3d 62, 63-64 (11th Cir. 1995) (upholding firearm enhancement when the gun was found in a dresser drawer in the same room as several drug-related objects such as scales, a bag containing cocaine residue, and a large amount of cash); *United States v. Delgado*, 981 F.3d 889, 902-03 (11th Cir. 2020) (upholding firearm enhancement where the gun was found with scales and powders and the defendant's home was the intended destination for drugs); *United States v. Carillo-Ayala*, 713 F.3d at 92 ("A firearm found in close proximity to drugs or drug-related items simply 'has' —without any requirement for additional evidence—the potential to facilitate the drug offense."). On this record, the district court did not clearly err in

finding, by a preponderance of the evidence, that the firearm was present at the site of the charged conduct, and Mr. Johnson does not challenge this finding as clearly erroneous.

Mr. Johnson argues that he did not possess, or even know about, the gun that was stored inches from where he slept, with its brightly colored handle visibly protruding from his mattress. This purported lack of knowledge—which the district court was not required to credit—is not sufficient to show that Mr. Johnson did not constructively possess the gun. *See United States v. Villarreal*, 613 F.3d 1344, 1459 (11th Cir. 2010) (constructive possession, which means "ownership, dominion, or control over an object itself or control over the premises in which the object is concealed," is sufficient for a firearm enhancement). In any event, there is no dispute that Mr. Johnson's conspirator, Ms. Walker, possessed the weapon. Mr. Johnson's argument therefore fails. *See United States v. Westry*, 524 F.3d 1198, 1221 (11th Cir. 2008).

Under § 2D1.1(b)(1) to apply the weapon enhancement to members of a conspiracy the government must prove by preponderance of the evidence that "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." *United States v. Gallo*, 195 F.3d 1278, 1284 (11th Cir. 1999). Mr. Johnson concedes that the government has established that he and Ms. Walker were members of the conspiracy at the time of the firearm possession. As to the

foreseeability—it is reasonably foreseeable for a co-conspirator to possess a firearm in a lucrative illegal drug conspiracy. *See United States v. Pham*, 463 F.3d 1239, 1246 (11th Cir. 2006). Mr. Johnson and Ms. Walker not only lived together but they also were in a relationship since 2013 and have a child together. Their close familiarity weighs in favor of Mr. Johnson's ability to foresee Ms. Walker's actions. *See United States v. Fields*, 408 F.3d 1356, 1359 (11th Cir. 2005) (noting that because the defendant and the co-conspirator were cousins and grew up together their close relationship increased the possibility that the defendant would be able to foresee the co-conspirator's actions, including the gun possession).

## V

We AFFIRM Mr. Johnson's sentence.

**AFFIRMED.**